Charlie Mae **BOLLING**, Plaintiff,

v.

**UNION NATIONAL LIFE INSURANCE COMPANY, et al., Defendants.**

No. CV–5–A–719–N.

United States District Court, M.D. Alabama, Northern Division.

Oct. 2, 1995.

Jock M. Smith, Tuskegee, AL, Thomas R. Fields, Hayneville, AL, for plaintiff.

William H. Brooks, M. Christian King, Birmingham, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### *INTRODUCTION*

This cause is before the court on the Plaintiff's Motion to Remand, filed on June 9, 1995.

Plaintiff filed this suit in the Circuit Court of Lowndes County, on or about April 21, 1995. Plaintiff alleged various causes of action including fraud, fraudulent suppression, and breach of contract against Union National Life Insurance Company ("Union National") and Sexton. The defendant Union National removed the case to federal court on May 26, 1995, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332, the diversity statute.

The first issue presented in this case involves the amount in controversy requirement under § 1332. The plaintiff's complaint did not include a claim for a specific amount in an *ad damnum* clause, and therefore the

claim seeks recovery of an unspecified amount, including punitive damages. According to the defendant, to justify remand to state court, the amount in controversy at the time of removal must appear to a legal certainty to be less than the jurisdictional amount. Plaintiff contends that where there is no specified amount in the complaint, the defendant bears the responsibility of proving to a legal certainty that the amount in controversy is more than $50,000.

A second issue requires the court to examine whether there exists complete diversity in this action. Plaintiff alleges that she is a citizen of Alabama. The defendant Union National is apparently a corporation organized under the laws of Louisiana with its principal place of business in Louisiana. Defendant Sexton is allegedly a citizen of Alabama. Thus, there is no question that, under the facts alleged, one of the named defendants (Sexton) is a non-diverse party, and federal jurisdiction would ordinarily be lacking. However, the defendant Union National contends that Sexton was fraudulently joined solely to destroy diversity and that therefore his citizenship should be disregarded by the court in its jurisdictional analysis.

For the reasons set forth below, the court finds that the defendant has sufficiently established that the amount in controversy exceeds the requisite $50,000, exclusive of costs and interest. However, because the court finds that defendant Sexton was not fraudulently joined, Plaintiff's Motion to Remand is due to be GRANTED.

### FACTS

Because this motion to remand attacks only the jurisdiction of the court, most of the facts in the underlying complaint are not relevant at this time and will not be set forth herein.

There is no dispute as to two facts in this matter. First, at some point in the past, the plaintiff purchased one or more insurance policies on her son's life through the defendant Union National.[1] Second, this or these policies have since lapsed.

The plaintiff originally sued Union National and Sexton in state court under several state law theories including fraud, fraudulent suppression, and breach of contract. In each count of her complaint, the plaintiff concluded by stating "Wherefore, premises considered, Plaintiff prays for judgment for compensatory and punitive damages as a jury may award, interests and costs above the jurisdictional minimum of the Court."[2]

The plaintiff alleges that she purchased an insurance policy on her son's life from the defendant Union National in May 1988. She alleges that she fully complied with the terms of the policy and paid her premiums. It is somewhat unclear whether plaintiff contends that the company canceled her first policy without reason and issued a second policy, with an increase in the premium, or whether she contends that the company modified her policy and raised her premiums for no reason. It is clear that part of plaintiff's claim is that her policy was canceled.

The defendant contends that the plaintiff allowed the first policy to lapse in August 1988. Defendant also asserts that the plaintiff purchased a second policy, issued in January 1991, but that this second policy lapsed in March 1993.

According to the complaint, the cause of action against Sexton is based on the following:

6. ... Defendant, Eddie Sexton, ... represented to Plaintiff over a period of years, as an agent on the route, that her policy was in good standing with Defendants and that said policy had not been switched, changed, cancelled, or altered in anyway [sic]. Defendant Sexton continued to make these representations in spite of the Plaintiff's inquiry repeatedly as to why her premiums on said policy had increased from $8.04 per month to approximately $9.84 per month.

---

1. It appears that Union National's policies and operations have been transferred to United Insurance Company of America ("United") when the two companies merged sometime in late 1990 or early 1991.

2. The jurisdictional minimum for circuit courts in Alabama is $1500.

**7.** In reliance on said representations, Plaintiff signed the said application of insurance, secured the referenced policy, and subsequently throughout the years paid $8.04 per month and thereafter $9.84 per month ... Plaintiff was never given a copy of the said insurance policy by Defendant Eddie Sexton though she repeatedly asked him on a regular basis for a copy ... On each occasion, Defendant Sexton, represented to Plaintiff ... that said copy of the insurance policy would be delivered next month and that the policy was in good standing and current.

These are the only paragraphs in the complaint that detail any action taken specifically by the defendant Sexton[3]; however, in her complaint, the plaintiff repeatedly refers to actions taken by "Defendants." In some instances, these allegations could refer to Sexton.

Union National has submitted two affidavits in support of its Motion to Remand. According to these documents, Sexton was employed at United (not Union National) from April 6, 1992, through February 1, 1993, less than one full year. Based on the dates provided by the insurance company as to plaintiff's coverage, it appears that neither of the policies that form the basis of the complaint was issued while Sexton was an employee of either United or Union National. Additionally, Sexton was not employed by either company when the policies allegedly lapsed. It appears from the complaint that Sexton simply collected premiums from the plaintiff, assured her that her coverage had not been altered, and failed to deliver to her a copy of the policy. According to the evidence before the court, the second policy was in full effect throughout Sexton's employment with United.

### REMAND

■ Federal courts are courts of limited jurisdiction. *See, Kokkonen v. Guardian Life Ins. Co. of America,* —— U.S. ——, ——,

114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir.1994); *Wymbs v. Republican State Executive Committee,* 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). As such, they have the power to hear only those cases that they have been authorized to hear by Congress or by the Constitution. *Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1675. Because of this, the law in the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear. As stated by the Eleventh Circuit, "in deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

### A. Amount in Controversy

■ In order for a federal court to have jurisdiction over a case pursuant to the diversity statute, the amount in controversy must exceed $50,000, exclusive of costs and interest. 28 U.S.C. § 1332. It is the removing party who bears the burden of establishing the jurisdictional requirements, including the amount in controversy. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Burns,* 31 F.3d at 1094.

■ In the ordinary case, the plaintiff states the amount requested in her complaint, and the court may look to that amount in determining jurisdiction. *Burns,* 31 F.3d at 1094. As noted by the plaintiff, the Eleventh Circuit recently held that where a plaintiff specifically requests an amount under the jurisdictional level, the case should be remanded unless the defendant "can prove to a legal certainty that plaintiff's claim must exceed $50,000." *Burns,* 31 F.3d at 1095. However, in *Burns* the plaintiff specifically stated in her complaint that she sought actu-

---

**3.** Plaintiff stated in her reply brief that "evidence will also be that Sexton did sell plaintiff one or more other policies." These alleged sales are not part of any action before this court. There is no allegation of fraud as to this or these alleged sales. The court properly looks to the complaint in determining whether or not the plaintiff will be able to prove a cause of action against the defendant, and thus, the statement regarding additional policies found in plaintiff's brief is not relevant.

al and punitive damages "in such sum as the jury determines to be just, lawful, and fair, *but not more than $45,000* plus costs." *Id.* at 1094 (emphasis added). The decision in *Burns* turned on the fact that the plaintiff's attorney, as an officer of the court who was bound by the ethical rules and the requirements of Rule 11, had claimed less than $50,000 in the complaint, and that the claim under these circumstances deserved deference and a presumption of truth. Therefore, the court required proof to a legal certainty that the claim must exceed $50,000 in order to overcome the lawyer's specific claim. Plaintiff's attorney in the instant case, however, has not included such a limitation in his client's complaint and, in fact, has specifically argued that he need not do so in order to be entitled to a remand. Because the complaint has failed to specify the damages sought, the attorney's integrity and duty of candor with the court arising from signing the complaint are not implicated and *Burns* does not apply.

The question, then, is what ought be the burden on a defendant trying to defeat a motion to remand under those circumstances and what should the court look to in order to determine whether or not the jurisdictional amount in controversy is met when the complaint contains no specific *ad damnum.*

In deciding these issues, the court is persuaded by the well reasoned decision by the Honorable Robert Varner in *Steele v. Underwriters Adjusting Co., Inc.* 649 F.Supp. 1414 (M.D.Ala.1986). The plaintiff in *Steele* brought suit in state court alleging a cause of action for bad faith. In *Steele,* as in the instant case, the plaintiff did not allege a specific damage amount. Instead, the plaintiff requested, "judgment against Defendant in the [sic] amount to be fairly ascertained by the jury." *Id.* at 1415. The defendant filed a notice of removal, arguing that the amount in controversy exceeded the jurisdictional requirement (at that time $10,000), and plaintiff filed a motion to remand. According to the court, plaintiff's argument in favor of remand

was "that, if the plaintiff in a civil action fails to specifically demand an award in excess of $10,000, then the defendant is precluded from removing the case to federal court, regardless of whether the plaintiff might recover well in excess of $10,000." *Id.* Judge Varner rejected this argument as an approach that was "simply unfair and [would] not be permitted by this Court." *Id.* He held that remand would be denied if the defendant proved by a preponderance of the evidence that the amount in controversy exceeded the minimum sum necessary to confer federal jurisdiction. *Id.*[4]

Although the Eleventh Circuit does not appear to have addressed the issue of what to do when a plaintiff fails to claim a specific amount,[5] similar standards to that used in *Steele* have been adopted by the appellate courts of the Fifth, Sixth, and Ninth Circuits. *De Aguilar v. Boeing,* 11 F.3d 55 (5th Cir. 1993); *Gafford v. General Electric Co.,* 997 F.2d 150, 158 (6th Cir.1993); *Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir.1992). These courts' approaches properly balance the plaintiff's right to pursue her action in the forum of her choosing and the defendant's right to a federal forum in those cases where federal jurisdiction exists. According to those decisions, where the plaintiff fails to include an *ad damnum* clause specifying the amount in controversy, the burden is on the defendant to prove to the court by a preponderance of the evidence that the amount exceeds the jurisdictional requirement. *De Aguilar,* 11 F.3d at 58; *Gaus,* 980 F.2d at 567 (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)).

In determining whether the jurisdictional level has been met, the court should look for guidance to decisions rendered in cases on the same type of suit. *De Aguilar,* 11 F.3d at 58; *Steele,* 649 F.Supp. at 1417. Plaintiff has a cause of action for fraud, and therefore may be entitled to punitive dam-

---

**4.** In *Steele,* the court ordered the parties to conduct further discovery in order to determine the amount in controversy. Thus, the court reserved ruling on the Motion to Remand.

**5.** The court in *Burns* acknowledged that that case did not involve the issue presented by cases in which the amount of damages sought by the plaintiff was unspecified. *Burns,* 31 F.3d at 1096, n. 6.

ages.[6] In the instant case, the defendant has presented the court with numerous decisions from the Alabama courts in which a fraud action yielded liability of greater than $50,000, despite the fact that plaintiffs' out-of-pocket or actual damages were slight. Based on these cases, it is clear that in Alabama, when a plaintiff seeks recovery for fraud against an insurance company and asks for punitive damages, the recovery, if the plaintiff prevails, may very well exceed $50,000. Accordingly, in view of awards rendered in similar cases, and the fact that, unlike the plaintiff in *Burns,* this plaintiff has not sued for, and offered to settle for, less than $50,000, defendant has met its burden of producing sufficient evidence to convince this court that the amount in controversy is greater than $50,000 exclusive of costs and interest, and therefore the jurisdictional requirements have been met in this case.

The court recognizes that policy in this Circuit favors remand. However, there is a countervailing concern that dictates that a federal court "be cautious about remand, lest it erroneously deprive defendant of the right to a federal forum." 14A **Wright, Miller & Cooper,** Federal Practice & Procedure § 3721, p. 218–19 (1985). The plaintiff's argument in both *Steele* and the instant case would permit a plaintiff to defeat the defendant's right to a federal forum simply by omitting a specific *ad damnum,* unless a defendant proves to a legal certainty that the plaintiff, if successful, *must* recover more than $50,000. That burden is reasonable if, as in *Burns,* the plaintiff has specifically sued for less. It is not reasonable, however, when the plaintiff claims no specific amount, particularly where the plaintiff may recover punitive damages.[7] The important issue of whether a federal court has jurisdiction over

a lawsuit on the basis of the amount in controversy should be decided on the basis of substance, not gamesmanship.

 This court holds that in a diversity case where no specific amount of damages is claimed in the complaint filed in state court, the removing defendant's burden is to establish by a preponderance of the evidence that the amount in controversy is greater than $50,000 and that this may be done by sufficient proof that a plaintiff's verdict reasonably may exceed that amount. This standard balances the plaintiff's right to choose a *proper* forum and the defendant's right to remove where federal jurisdiction exists.

The court points out that a plaintiff who, for whatever reason, seeks to remain in state court may ordinarily do so by filing his complaint in state court specifically requesting an amount that is less than the jurisdictional requisite.[8] In that instance, where the attorney, as an officer of the court, alleges in good faith damages insufficient to confer jurisdiction on this court, defendant seeking to prevent a remand would rightly be put to the much more stringent standard set forth in *Burns.* Plaintiff has not done so in this action though, and thus, remand is not proper based on the alleged failure to meet the amount in controversy requirement.

The court turns now to the defendant's allegation that defendant Sexton was fraudulently joined in order to defeat diversity.

## A. Fraudulent Joinder

In this instance, Defendant contends that the court has jurisdiction under the diversity statute. 28 U.S.C. § 1332. In order for a federal court to have jurisdiction over a matter under the diversity statute, the parties to

---

6. Punitive damages, if available, are to be considered by the court in determining the amount in controversy. *Holley Equipment Co. v. Credit Alliance· Corp.,* 821 F.2d 1531, 1535 (11th Cir.1987).

7. As stated in a cogent opinion from the Eastern District of Michigan, "If the burden of proof were on the defendant in a removed case to show the factual predicate for federal jurisdiction to a legal certainty, then the defendant would have to prove the plaintiff's damages to a legal certainty in order to withstand a remand to state court. The application of the legal certainty test [the

*Burns* test] in that case would place the defendant in the unenviable position of having to prove the plaintiff's case." *Garza v. Bettcher Industries, Inc.,* 752 F.Supp. 753, 756 (E.D.Mich. 1990).

8. This court has, in the past, required a plaintiff seeking remand to file an affidavit stating that when he filed his complaint he did not intend to seek nor would he accept more than the jurisdictional amount. *Taylor v. Campbell,* 852 F.Supp. 978, 979–80 (M.D.Ala.1994).

**406**

the action must be diverse. 28 U.S.C. § 1332. Although the statute does not specify complete diversity, it has long been the rule that diversity jurisdiction requires all plaintiffs to be diverse from all defendants. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

■ It is conceded that defendant Sexton is not a diverse party; however, defendant Union National argues that Sexton has been fraudulently joined. If this is so, then the court disregards Sexton's citizenship for the purposes of determining jurisdiction. *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983). Thus, if Sexton has been fraudulently joined, complete diversity exists, and this court would have jurisdiction pursuant to § 1332.

■ As stated above, the party that removes an action to federal court generally has the burden of establishing federal jurisdiction. *Pullman Co. v. Jenkins,* 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939). Accordingly, where a party alleges fraudulent joinder, that party bears the burden of proving its allegations. They must do so by clear and convincing evidence. *Coker,* 709 F.2d at 1440; *Yawn v. Southern Railway Co.,* 591 F.2d 312, 316 (5th Cir.),[9] *cert. den.* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979). Although the court properly looks to the complaint itself to determine whether or not there has been fraudulent joinder, the court may resort to additional submissions such as deposition testimony and affidavits in making its determination. *Coker,* 709 F.2d at 1440. However, all allegations and submissions must be viewed in the light most favorable to the plaintiff.

There are two tests that a court uses to determine whether a party has been fraudulently joined. If either is satisfied, then the non-diverse party has been fraudulently joined and should be ignored for jurisdictional purposes. The factors to examine are: 1) whether there is no possibility that the plain-

tiff can establish a cause of action against the named defendant under either the law or the facts alleged; and 2) whether the plaintiff has fraudulently pled jurisdictional facts in order to bring the non-diverse party into the action. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989).[10]

Plaintiff's lawsuit names Sexton as agent of Union National. Reprinted above are the portions of the complaint that deal with Sexton. There is no question that Sexton did not sell either policy to the plaintiff or that he was not employed by the defendant. Sexton only worked for the defendant's current parent company, United Insurance Company of America, for a period of ten months between April 6, 1992 and February 1, 1993. The first policy was issued in May 1988, and allegedly lapsed in August of that same year, almost two years before Sexton was employed by United. The second policy was issued before Sexton worked for United as well, in January 1991. When this policy lapsed, Sexton was no longer employed by United. Thus there cannot be a cause of action against Sexton based on the actual sale or cancellation of plaintiff's insurance.

■ Plaintiff alleges, however, that the defendant Sexton collected premiums from her while misrepresenting to her that the policy had not been switched, changed, cancelled, or altered in any way, and that he failed to deliver to her a copy of her insurance policy. The court interprets this to be a claim for fraudulent suppression. In order to prevail in an action for fraudulent suppression, a plaintiff must prove the following elements: 1) the suppression of a material fact; 2) that the defendant was under a duty to communicate; 3) because of a confidential relationship between the parties; 4) where such suppression causes injury to the plaintiff. *Applin v. Consumers Life Ins. Co. of North Carolina,* 623 So.2d 1094, 1098 (Ala.1993).

**9.** In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**10.** There are no allegations that the plaintiff has "fraudulently pled jurisdictional facts." Therefore, the court's analysis is limited to whether there is no possibility that the plaintiff could establish a cause of action against the defendant Sexton.

As to the claims against the insurance company, it is unclear if plaintiff claims that she purchased one policy and the defendants altered that policy, or if she claims that she purchased two policies, both of which were canceled improperly. As to Sexton, plaintiff alleges that he suppressed the true nature of the coverage by failing to deliver a copy of the policy as she requested. Plaintiff alleges that she was kept in the dark as to her coverage and that her coverage lapsed, due at least in part to Sexton's failure to deliver the policy.

If the court accepts the allegations of the complaint as true, then it appears that the plaintiff may be able to establish a cause of action for fraudulent suppression against Sexton. In this instance, the suppression complained of is the failure to deliver the policy while falsely assuring her that no changes had been made in it, which prevented the plaintiff from learning what her coverage was. There is no doubt that the defendant was under a duty to disclose information. In fact, the duty of the insurer to deliver the purchased policy to the insured is statutory. Ala.Code § 27–14–19 (1975). Additionally, from the facts alleged, it appears that the plaintiff and the defendant Sexton had the sort of confidential relationship that would meet the third factor of the plaintiff's case. Plaintiff further alleges that because she was unable to determine her coverage, and because she continued to pay premiums on the basis of misrepresentations, she was damaged.

In order to retain jurisdiction over this case based on a finding of fraudulent joinder, the court must hold on the basis of clear and convincing evidence that there is "no possibility" that the plaintiff could prove a cause of action against Sexton under the law and the facts alleged. Given the strong policy in favor of remand, and the heavy burden that the defendant must meet in order to prove fraudulent joinder, the court is not able to do so. A "possibility" exists, and this is an issue best left to the state court. Therefore, the court finds that Sexton has not been fraudulently joined and that his citizenship is not properly disregarded by the court in determining subject matter jurisdiction over this matter. Thus, complete diversity does not exist and remand of this action is proper.

## CONCLUSION

For the reasons set forth above, the court finds that the Plaintiff's Motion to Remand is due to be GRANTED. Therefore, it is ORDERED that this cause be and it is hereby REMANDED to the Circuit Court of Lowndes County, Alabama. The clerk is DIRECTED to take all steps necessary to effect this remand.